*Hord* for plaintiff; *Payne & Waller* for defendants.

---

## Waggener vs Hardin.

APPEAL FROM THE ADAIR CIRCUIT.

*Administrators. Distribution. Adverse possession.*

JUDGE EWING delivered the Opinion of the Court.

OLIVER G. WAGGENER claiming two slaves, Ellen and her child, under an allotment to him of the former, as

one of the distributees of John Waggener, deceased, before the birth of the child, instituted an action of detinue for them against Parker C. Hardin, who claimed them as purchaser of the mother, at a sale made by the Sheriff, under an execution which issued against Robert Trabue, and by virtue of which, she had been levied on as the property of Trabue, the husband of one of the distributees, after the asserted allotment to O. G. Waggener.

In the progress of the case, numerous instructions were given to the jury at the instance of both parties, and they found a verdict for the defendant, and from the judgment rendered thereon, the plaintiff has appealed to this Court.

The slave Ellen, with others, was the property of John Waggener, dec'd. and as such came to the hands of O. G. Waggener, Richard Gregory and A. Garnett, who had been duly appointed the administrators of the estate of the decedent; and the evidence tends satisfactorily to establish, that the two former, by the consent of all the distributees except the infant son of P. C. Hardin, who claimed as the representative of his deceased mother, made a division of the slaves among the distributees, and among others allotted Ellen to O. G. Waggener, who claimed, as well as his own share, also that of Robert Trabue's, by virtue of a previous assignment from him; that this decision and allotment was made on the 10th of February, 1831, and the slaves so allotted, charged to each distributee, on the account book kept by the administrators with the heirs; that A. Garnett, the other administrator, saw and examined the division the next day, and made no objections to it; that O. G. Waggener started for his residence in Tennessee on the morning of the 12th of February, leaving Ellen and the other slaves allotted to him at the old place, to be brought to him or near his residence by a brother-in-law; that on the night of the 12th Ellen was seized by the Sheriff as the property of Robert Trabue, and taken off and subsequently sold, and the defendant purchased her, having previously made proclamation that he who purchased would buy a law suit. The evidence introduced

by the defendant satisfactorily tends to the conclusion, that the administrators, *after* the division and seizure, and sale by the Sheriff, owing to doubts entertained by them as to the legality of the division, either cancelled the division or determined to treat it as a nullity, and so treating it, instituted suit in their names as administrators, against the Sheriff, for the seizure and sale of Ellen, in which they afterwards suffered a nonsuit, and also filed a bill for a division of the slaves, and answered a cross bill denying the validity of the former division. ·

Two questions arise in this case which alone we deem necessary to consider.

1st. Was it competent for the administrators to make a division without the assent of the infant son of ·P. C. Hardin, or his guardian?

2d. If it was competent for them to do so, and an absolute *division* was made, could they afterwards *cancel* the division by the assent of O. , G. Waggener, so as to reinvest the *legal title* to Ellen, and right of action for her in the administrators, whilst she was held by the Sheriff or the defendant in *adverse* possession.

1st. We have no doubt that the legal title to slaves vest in the administrators of a decedent, and that they may make a division and vest the *legal title* in the distributees, and that too without the assent of one of them, and that an allotment, so made, will entitle the distributee to maintain any form of action at law for the slaves so allotted. The remedy of the distributee who was not a party to the division nor concurred in it, is in equity, where he may make the administrators responsible for his share, or as they held the title in trust, which they have passed to the distributees, he may go against them for his share, as *trustees holding the title*, subject to his *equity*, as one of the distributees. But his equitable right can in no wise affect or change the character of the *legal* title, which has passed by the assent of the administrators, to the distributees severally, to whom the allotment has been made.

2d. It has been frequently settled by this Court, that the sale or transfer of personal property, in the adverse possession of another, will vest no title in the purchaser:

*Administrators may make a valid allotment of slaves to a part of the distributees, in the absence of other distributees, and thereby invest them with the legal title.*

*A distribution and allotment thus made, cannot be cancelled so as to re-invest*

the administrator with the legal title, after the property (a slave,) comes into the *adverse possession* of a third person, it is, in substance, a sale of a chose in action, and against the policy of the law.

2 *Mar.* 136, *Stockdale* vs *Fugate;* 1 *Litt. Rep.* 298, *Young* vs *Ferguson;* 1 *J. J. Marshall,* 26, *Beard, &c.* vs *Griggs.* A sale of property thus conditioned, is a sale of a mere *chose* or *right* of action, which is against the policy of the law, as tending to encourage litigation and leading to the oppression of the weak and ignorant.

The same policy which would prohibit a direct sale or transfer, would, in our judgment, prohibit a *cancelment* of a prior sale or transfer of title, by way of investing the title in the former owner. A re-sale or re-transfer is one mode by which the title may be re-invested in the former claimant, and the cancelment of a former sale another. Either mode, we think, is equally against the policy of the law and unavailing to *pass* the *title* while the *adverse posssession* is held by another. All the evil consequences which would spring from the one mode would equally spring from the other. Either operates, and is intended to operate, as the transfer of a mere *chose in action*, and the creation of a right in another and different party, to sue the adverse holder.

As the Circuit Court has given *instructions to the jury* without regard to this principle, and especially in instruction 24th, has instructed them, on the motion of the defendant, in substance, that, if they should find that a division was made, and also find that the division was afterwards *cancelled*, they should find for the defendant, without any reservation as to the effect, which an adverse holding of the slave at the time, had upon the cancelment, or any saving predicated upon the finding of the jury, that an adverse holding existed at the time, the judgment must be reversed and cause remanded, that a new trial may be granted without the payment of costs.

*Owsley* for plaintiff; *Monroe* for defendant.